# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WARREN K. GLADDEN** | * | |
| Plaintiff | * | |
| v. | * | Civil No. **PJM 10-1665** |
| **GARY LOCKE, SECRETARY,** | * | |
| **DEPARTMENT OF COMMERCE** | * | |
| Defendant | * | |

## MEMORANDUM OPINION

Warren K. Gladden, *pro se*, has sued the U.S. Department of Commerce ("Commerce"), based on his ultimately unsuccessful application for employment with the National Institute of Standards and Technology ("NIST"), a Commerce sub-organization.[1] Gladden alleges race and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

Commerce has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment [Paper No. 13], to which Gladden has responded. Since Commerce has cited evidence outside the four corners of the Complaint, the Motion will be treated as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). For the following reasons, Commerce's Motion for Summary Judgment is **GRANTED**.

---

[1] Gladden is a frequent filer in this Court and apparently elsewhere. He currently has three other discrimination suits on the Court's docket. *See Gladden v. McHugh*, PJM 10-1793; *Gladden v. Locke*, PJM 10-1756; *Gladden v. McHugh*, PJM 10-3402. Commerce asserts that Gladden has seven total pending discrimination suits, including those filed elsewhere.

**I.**

In the spring of 2007, NIST posted a vacancy announcement for the position of Chief of the U.S. Measurement System ("USMS"), a sub-organization of NIST. The vacancy announcement listed requirements for the position, including: (1) expertise in the field of metrology and measurement science; (2) knowledge in the use of metrology to support research in measurement sciences and delivery of metrology services; (3) one year of specialized experience in: conducting analysis of measurement-related needs, collaborating with measurement providers and standards development agencies, and using metrology to support research in measurement services; (4) a bachelor's degree in one of several fields, including physics; and (5) a "track record" of leadership and collaboration with professional societies, interagency groups, and standards committees.

On June 8, 2007, Gladden, an African-American male born in 1954, applied for the USMS position, citing the following credentials: He graduated from the University of Maryland in College Park with a bachelor's degree in physics and a master's degree in electrical engineering, and from the Stevens Institute of Technology with master's degrees in business administration and project management. He was employed with the National Bureau of Standards, a department within Commerce, from 1974 until his resignation in 1986. Despite these credentials, Gladden did not receive the open position at USMS.

Commerce uses a three-stage system for selecting applicants for positions such as the one in question. At each stage a hiring official reviews applications and determines whether a given applicant should proceed to the next hiring step. The first stage, conducted in this instance by human resources specialist Louise Parrish, culled applicants who did not meet the basic hiring criteria, leaving Gladden and 15 other potential hires under consideration.

The second stage, also conducted by Parrish, consisted of a "QuickScore" examination—a set of automated true/false and yes/no questions that produces a rough "score" for each applicant—and a subjective review of the merits of each candidate. Parrish initially determined that Gladden lacked the requisite one year of specialized experience and excluded him from the final applicant pool. At this point in time the remaining four applicants were: John Slotwinski (Caucasian, born in 1969); James Adams (Caucasian, born in 1957); David Black (Caucasian, born in 1959); and Clare Alloca (Caucasian, born in 1963). At Gladden's request, however, Parrish referred his application to another human resources official, Belinda Collins, for review of Parrish's decision to exclude Gladden. Collins subsequently determined that Gladden did in fact possess the qualifications necessary for inclusion in the final selection group and added him to the remaining pool of applicants, dropping Slotwinski as a result. The four applicants who advanced to the final stage of review received QuickScore ratings ranging from 97.9 (Gladden) to 91.45 (Black). Alloca received a score of 93.4.

The final stage of the application process consisted of review by a selection panel chaired by Dr. William Eugene Anderson. The panel reviewed applicant materials and determined which applicants to interview. According to Collins, Gladden was not interviewed because he had not published in over a decade and lacked experience with metrology systems. Anderson stated that the interviewed applicants all had experience with NIST within the prior eight months or two years, whereas Gladden's experience in the field was much less recent. The other three remaining applicants were interviewed, and out of these three Alloca was selected for the position.

The Commerce hiring system uses Monster Hiring Management ("MHM"), an entry portal for job applications, in conjunction with USAJOBS.[2] Applicants complete designated data fields though USAJOBS, and certain completed fields are transferred to the MHM entry portal for review by the hiring agency. Information is transferred to the MHM database from USAJOBS only if the MHM system includes a dedicated field for the information. Therefore, information entered into the USAJOBS system is not necessarily transferred to Commerce's MHM database when an application is submitted.

Race data were not requested by the USAJOBS system, and the Commerce hiring database includes no dedicated field for race. An applicant's date of birth is entered into the USAJOBs database and requested by the MHM hiring portal, but the parties differ as to whether the human resources employees reviewing Gladden's application were aware of his age. Gladden's application listed his bachelor's degree from the University of Maryland as awarded in 1979. Gladden alleges that race data were entered into the USAJOBs portal, but implicitly acknowledges that no race data can be found in the materials received by Commerce. None of the application materials discussed by the parties in their papers indicate Gladden's race.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 challenges the factual sufficiency of the complaint. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "Whether or not a genuine issue of material fact exists is a determination for the court. . . ." *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 673 (4th Cir. 1967).

---

[2] USAJOBS is a widely used application portal for employment with the federal government. *See* USAJOBS Info Center, http://www.usajobs.gov/infocenter/ (last visited May 24, 2011).

That determination should afford the party opposing a motion for summary judgment "all favorable inferences which can be drawn from the evidence." *Id.* at 674.

However, denial of summary judgment requires a *genuine* issue of material fact, not just "the mere existence of *some* alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Materiality is determined by the substantive law— "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Whether it is a *genuine* issue is judged on whether a reasonable jury could find for the non-moving party. *See id.* at 250. When ruling on a motion for summary judgment, the inquiry is whether the evidence presented by the nonmoving party could sway a reasonable jury to, under the relevant evidentiary burden, find for the nonmoving party. *Anderson*, 477 U.S. at 252. "A mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.

Gladden alleges race and age discrimination in violation of the 1964 Civil Rights Act and the ADEA, respectively. As Plaintiff, he has the burden of establishing discriminatory intent for either claim. In both instances, this burden can be met either by presenting direct evidence of

discriminatory animus, *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988), or through the indirect burden-shifting proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Bodkin v. Town of Strasburg, Virginia*, 386 F. App'x. 411, 413 (4th Cir. 2010) (noting that ADEA claims are analyzed under the *McDonnell Douglas* framework). Since Gladden has offered no direct evidence of discriminatory animus, both of his claims are properly analyzed under the three-part *McDonnell Douglas* framework.[3] *Bodkin,* 386 F. App'x. at 413.

Under *McDonnell Douglas,* to justify an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* The central focus of the inquiry is whether the employer has treated some people less favorably than others because of a protected status, including age and race. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977)); *Bodkin*, 386 F. App'x at 413 (noting that the *McDonnell Douglas* framework applies to claims of age discrimination).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The employer's burden is merely one of production, not persuasion. *Id.* at 255-56. If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a "new level of specificity." *Id.* at 255.

At that juncture, the plaintiff would have to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id.* at 253; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989). To support a finding of pretext,

---

[3] Gladden relies entirely on the *McDonnell Douglas* framework, and provides no evidence tending to show discrimination on the part of a specific individual within NIST.

a plaintiff must demonstrate that the hirer's articulated reasons have no basis in fact, or its reasons were not the "real" reason for the adverse employment action. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996). "The plaintiff must establish that he was the better qualified candidate for the position sought" to meet his burden of proving that the company's explanation is pretextual and that he was the victim of intentional discrimination. *Evans v. Techs. App. & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996).

The ultimate burden of showing that the employer intentionally discriminated against him remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253. Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.,* 148 F.3d 413, 416-17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

**IV.**

Gladden claims he suffered an adverse employment action as a result of discrimination based on his race or age. The Court finds Gladden has failed to establish a *prima facie* case that NIST's decision not to hire him was motivated by race discrimination. Further, although the Court concludes that Gladden has satisfied the *prima facie* case for age discrimination, it also concludes that NIST has articulated legitimate, non-discriminatory reasons for its employment decision, and that Gladden has produced no evidence showing these reasons were pretext for discrimination.

**A.**

To establish a claim of failure to hire due to race or age discrimination under the *McDonnell Douglas* framework, Gladden must show that: (1) he is a member of a protected group; (2) there was an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Burdine,* 450 U.S. at 253. Gladden satisfies the first two factors and the Court assumes, *arguendo*, that he satisfies the third.[4] The issue is whether the fourth prong is met, i.e., whether Gladden was rejected under circumstances giving rise to an inference of unlawful discrimination.

The applicant ultimately selected, Alloca, is a white female who was 43 or 44 at the time of the employment decision. Thus, the selectee was outside of Gladden's protected racial class and within Gladden's protected age class.[5]

**B.**

With respect to Gladden's race discrimination claim, under the *McDonnell Douglas* framework the selection of Alloca would generally fulfill the fourth element of the *prima face* case of employment discrimination. *See Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (holding that selection of an applicant outside the plaintiff's racial class satisfies the fourth prong of the *prima facie* case). However, the application of this rule to the present circumstances is problematic, since there is no indication that the selecting officials in this case were in any way aware of Gladden's race at the time of the employment decision. The *McDonnell Douglas*

---

[4] In a case such as this, where the ultimate issue is whether someone else was better qualified than the plaintiff, the third factor to some extent merges into the fourth.

[5] The fact that the ultimate selectee was also within the plaintiff's protected age class does not destroy his ADEA claim. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (holding that the crux of the ADEA is to prevent adverse action against a protected applicant because of his age, whether or not the ultimate selectee or replacement is also above the age of 40).

calculus should not be applied in a "rigid, mechanized, or ritualistic" manner. *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 611 (4th Cir. 1999). The test is, instead, a means to "fine-tune the presentation of proof and . . . sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant *intentionally* discriminated against her." *Id.* (emphasis added). Thus, this Court cannot ignore the practical reality that the selecting officials were unaware of Gladden's race at the time of the employment decision; to hold otherwise would misapply *McDonnell Douglas* as a formalistic ritual, instead of the practical, flexible standard the Fourth Circuit mandates.

Furthermore, the Fourth Circuit has held that the protected status must have *actually* played a role in the employer's decision-making process. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 286 (4th Cir. 2004). For this to be so, there obviously must be some indication that the deciding officials were aware of the applicant's status as a protected individual. *See, e.g.*, *Moore v. Reese*, 817 F. Supp. 1290, 1298 (D. Md. 1993) ("[I]t is impossible for an employer, who does not know the race of an employee, to discriminate against that employee."); *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 21 (D.D.C. 2009) (holding that it is "axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the basis of race where the defendant had no knowledge of the plaintiff's race). Without evidence indicating that Collins, Parrish, and/or Anderson were aware of Gladden's race, the Court cannot find the *prima facie* case satisfied.

Commerce's assertion that the MHM hiring system and the USAJOBs database include no field in which race could be entered or transferred to the selecting officials strongly indicates that the selecting officials could not have known Gladden's race at the time the decision was made. While Gladden asserts that he provided race information while completing the USAJOBs application, he implicitly accepts that the MHM hiring system includes no dedicated field for the

transfer of racial information. Furthermore, the exhibits presented by both parties bear no mention of Gladden's race in any application materials.

Gladden's argument that Commerce is *required* to know the race of every applicant, pursuant to the Uniform Guidelines for Employee Selection Procedures ("UGESP"), misses the point.[6] Irrespective of whether the *institution* of Commerce is required to maintain such data, there is no indication that these particular selecting officials for the USMS position had access to such data themselves. The only argument Gladden presents on this point is his purely speculative assertion that the hiring officials must have verified his employment with the U.S. government 20 years before, and during the course of this verification they must have somehow discovered his race. But Gladden cites no evidence indicating either: (1) that Commerce contacted any of Gladden's former government coworkers; or (2) that one of these coworkers mentioned Gladden's race or that Collins or Parish asked a former coworker about Gladden's race. A purely speculative surmise such as this is not evidence and does not give rise to a genuine factual dispute. *See Celotex Corp.*, 736 F.2d at 958-59 ("[A] mere scintilla of evidence is not enough to create a fact issue.").

The cases Gladden cites do not change the inescapable reality that a hirer cannot discriminate based on an unknown quality. Gladden first cites *E.E.O.C. v. Sears Roebuck*, 243 F.3d 846 (4th Cir. 2001). There, an employee of Sears applied for and was denied another position within Sears. *Id.* at 851. In that case, unlike the present one, it could easily be inferred that the plaintiff's current employer was aware of his race. Gladden also cites *Garrison v. Cambro, Inc.*, 428 F.3d 933 (10th Cir. 2005), which involved an existing employee applying for

---

[6] Gladden delves into the UGESP, which require public hirers to maintain information on the protected statuses of all applicants so as to facilitate monitoring for any disparate impact. 29 C.F.R. § 1607.4. The alleged failure to do so can, in some instances, result in a rebuttable presumption of discriminatory intent in a disparate impact case. *Id.* In this instance, however, Gladden is not making a disparate impact claim; rather, Gladden has asserted specific discrimination on the part of the selecting officials involved in the hiring for the position at issue.

a promotion. *Id.* at 936. An inference that the hirer knew of the applicant's protected status is as obvious there as it was in *Sears Roebuck*. Finally, Gladden cites *Brown v. Marriott International*, AW-07-1585, slip op. (D. Md. Oct. 31, 2008). In *Marriott*, the applicant informed the hirer prior to rejection that he was a "minority business owner," thus making his protected status clear to the hirer. *Id.* In none of these cited cases did the court hold that a *prima facie* showing can be satisfied where the plaintiff provides no evidence tending to prove the hirer's knowledge of the applicant's protected class. Indeed, in *Sears Roebuck* the court indicated that the crux of the fourth prong is that the applicant was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Sears Roebuck*, 243 F.3d at 851 (citing *Texas Dept't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A hirer making an employment decision unaware of the applicant's race cannot constitute circumstances giving rise to an inference of unlawful discrimination.

## C.

The *McDonnell Douglas* framework is also applicable to ADEA claims. *Bodkin*, 386 F. App'x at 413; *Walker*, 359 F.3d at 334. Thus, to get beyond summary judgment, Gladden must establish a *prima facie* case of age discrimination, which Commerce can rebut by showing legitimate non-discriminatory reasons for hiring Alloca over Gladden. *McDonnell Douglas*, 411 U.S. at 802. The burden would then shift back to Gladden to demonstrate that the proffered reasons were in fact a pretext for discrimination. *Id.* The Court concludes that Gladden has satisfied the four prongs necessary to show a *prima facie* case of age discrimination under the ADEA, but that his age discrimination claim fails because Commerce has articulated legitimate reasons for hiring Alloca over Gladden, and he has shown no pretext in its decision.

Gladden's age, in contrast with his race, is ascertainable from the application materials provided to Commerce. On his resume, he lists his date of graduation from the University of

Maryland as 1979. Based on that fact, the selecting officials could have roughly approximated Gladden's age, and the Court, in applying the elements of the *prima facie* case, will assume they in fact did so.

Gladden thus falls within the ADEA protected class, he applied for an open position for which he was qualified,[7] and he was rejected in favor of a "substantially younger" applicant. This satisfies the *McDonnell Douglas* test for a *prima facie* case of discrimination. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (noting that a *prima facie* case is met by selection of a "substantially younger" applicant, whether within or without the protected class); *Bodkin*, 386 F. App'x at 414 (*prima facie* case met by selection of a "substantially younger" applicant); *Inman v. Klockner Pentaplast of America, Inc.*, 347 F. App'x 955, 959 (4th Cir. 2009) (same).

Again, the fact that both Gladden and Alloca were over 40 does not preclude Gladden's claim. While the age gap that constitutes replacement by a "substantially younger" person is not precisely defined, gaps ranging from 8 years and up have qualified. *See, e.g., Hogg v. Fraser Shipyards, Inc.*, 407 F. Supp. 2d 1027, 1035 (W.D. Wis. 2006) (holding that 8 year gap was sufficient to constitute "substantially younger" replacement); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 328 (D. Md. 2003) (a replacement eleven years younger is substantially younger). The Court thus finds that choosing to hire Alloca, born in 1963, over Gladden, born in 1954, is sufficient to meet the "substantially younger" prong of the ADEA *prima facie* case. The burden now shifts to Commerce to provide legitimate, non-discriminatory reasons for choosing to hire Alloca over Gladden.

---

[7] Commerce, by advancing Gladden to the final stages of review, implicitly admitted that Gladden at least met the minimum qualifications for the position.

**D.**

The Court considers the explanation offered by Commerce to rebut the *prima facie* case of age discrimination and to explain its decision to hire Alloca over Gladden. Because its explanation applies to the claim of race discrimination as well as the claim of age discrimination, the Court considers the explanation in both contexts.

To rebut a presumption of discrimination, Commerce must cite legitimate non-discriminatory reasons for hiring Alloca over Gladden—i.e., that Alloca was more qualified than Gladden. If Commerce succeeds in doing so, Gladden would have to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Cerberonics, Inc.*, 871 F.2d at 456. To do that, Gladden would have to establish that he was the better qualified candidate for the position. *Evans v. Techs. App. & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996).

It is well settled that an employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259. Further, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). A candidate cannot "simply compare herself to other employees on the basis of a *single evaluative factor artificially severed* from the employer's focus on multiple factors in combination." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (emphasis added).

Here the selecting officials performed a thorough and complete review of all qualified applicants. After Parrish initially disqualified Gladden, Collins dutifully reviewed Parrish's decision and determined that Gladden in fact met the baseline level of experience necessary for

consideration and brought him back into the pool of candidates. At that point, Gladden progressed to the same stage of review as the three other remaining applicants.

Alloca, also in the pool, had received glowing recommendations from superiors, who particularly emphasized her interpersonal skills and ability to work well with others. These recommendations matched well with the stated requirements of the job, which included leadership skills and the ability to coordinate with other organizations. Collins stated that "first and foremost we were looking for someone who possessed the leadership qualities to lead the U.S. Measurement Systems . . . effort at NIST" and that the position required "someone who had the documented ability to collaborate with professional societies, interagency working groups and others." Collins went on to state that the selecting officials did not observe comparable leadership and management abilities in Gladden's resume. While Gladden might have preferred for Commerce to have relied exclusively on the QuickScore results, it is clear that the hiring officials were free to use whatever non-discriminatory criteria they pleased. *See Burdine*, 450 U.S. at 259. Their reliance on the intangibles reflected in Alloca's resume and recommendations was a legally permissible reason to choose Alloca over Gladden.

Gladden's narrow focus on his QuickScore results neglects the limited role the rating system plays in the hiring process. QuickScore, for example, does not evaluate answers to essay questions, an applicant's resume or references, or numerous other elements of employment applications that cannot be quantified by true/false answers. Furthermore, the position Commerce sought to fill was broad and far reaching, and the skills needed to perform it were similarly extensive. As stated in *Burdine*, an applicant may not select the criteria on which his application is to be judged. 450 U.S. at 259. Hirers are permitted flexibility and discretion to evaluate applications as they see fit, and courts reviewing these decisions may not artificially limit the analysis to factors advanced by the plaintiff. The Court declines to limit its evaluation to

the QuickScore results, and finds that Commerce has advanced legitimate, non-discriminatory reasons for hiring Alloca over Gladden. Accordingly, the burden shifts back to Gladden to show that the reasons advanced are pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

He has not in any way done so, either as to race or age. As established earlier, there is no indication that the selecting officials were even aware of Gladden's race at the time of the decision. As a matter of logic, there can be no pretext for discrimination based on a factor of which the hirers were unaware.

As for age discrimination, of the four final applicants, three were also members of Gladden's protected class. The only applicant *not* above the age of 40 after Collins' initial review was in fact dropped from the final stage of review in order to make room for Gladden. That means Alloca, the final selectee, was also within the class protected by the ADEA. While this does not automatically undercut Gladden's ADEA claim, the decision of the hiring officials to advance so many applicants within Gladden's protected class—and to drop a would-be finalist who was *not* in the protected class—certainly undermines any argument that the reasons advanced for his rejection were a pretext for age discrimination. *See, e.g.*, *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998) (in an employment termination case, concluding that retaining employees comparable in age to the plaintiff weakened an inference of discrimination). Moreover, the fact that two of the hiring officials—Anderson and Collins—were substantially older than Gladden, and that one of the hiring officials—Parrish—was roughly the same age, further weakens Gladden's claim of age discrimination. *See id.* (citing *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842 (7th Cir. 1996)).

In light of Alloca's overall stronger credentials, as well as all the other circumstantial factors indicating that age played no role in Commerce's hiring decision, the Court finds no basis from which a trier of fact could fairly infer that the reasons advanced by Commerce were

pretextual. From all that appears in the record before the Court, Gladden received a fair, objective evaluation of his application.

V.

Gladden has filed a Motion for Leave to File a Surreply [Paper No. 22]. The Court **GRANTS** this motion, but his arguments do not alter the Court's conclusions.

First, Gladden says that 5 U.S.C. § 3304, the relevant portion of which compels civil service examinations for certain government positions, refutes Commerce's position that the QuickScore results are but one metric to be evaluated in combination with other applicant credentials. 5 U.S.C. § 3304(b). The statute, however, does not say this. 5 U.S.C. § 3304(b) holds only that applicants for certain positions must *pass* an examination to be employed, not that examinations are the sole metric by which applicants are to be evaluated.

Gladden also cites a Merit Systems Protection Board "Merit Principle of the Month" press release, which uses the term "objective criteria" in reference to the Pendleton Act, which replaced the political patronage hiring system with a merit-based system, *see* Civil Service Act, ch. 27, 22 Stat. 403 (1883). This argument is equally unavailing. First, MSPB press releases are not law. Second, it is clear that the MSPB press release is only suggesting that individual merit, and not party affiliation, should guide government employment decisions. There is no legal support, and indeed there is considerable law in direct opposition, to Gladden's assertion that the QuickScore results should be the decisive factor in Commerce's hiring decisions. *See* § IV.D, *supra*; *see also Hux*, 451 F.3d at 315 (noting that a plaintiff may not compare himself to other applicants based solely on a single criterion).

Gladden also asserts that the hiring officials' decision to remove him from consideration must have been based on discrimination, since they had initially disqualified him based on his lack of the requisite one-year of specialized experience. He argues that this initial

disqualification, which was reversed, must have resulted in biased treatment of his application after the QuickScore results were published. This is sheer speculation. The Court can easily envision that selecting officials might have reservations as to the ultimate suitability of an applicant who barely qualifies for further review, but this certainly does not translate to the invidious race or age discrimination alleged in this case. Gladden's bare assertion—that "seek[ing] to disqualify Plaintiff after rating his examination is clearly pretextual"—is surmise, not evidence.

Finally, Gladden reasserts that his qualifications were superior to Alloca's based on their respective QuickScore results and because the selection panel, according to Gladden, stated that Alloca was not best qualified. The former argument has already been rejected, and the latter relies on a statement which cannot be found in the papers before the Court.

**VI.**

For the foregoing reasons, Gladden's Motion for Leave to File a Surreply [Paper No. 22] is **GRANTED**; Commerce's Motion to Dismiss or, in the Alternative, for Summary Judgment [Paper No. 13] is, however, **GRANTED** as to all Counts, and Final Judgment will be entered in favor of Commerce and against Gladden.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**May 31, 2011**